## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JERRY R. ROSE,                                    Case No. 1:14-cv-308
      Petitioner,

                                              Dlott, J.
      vs.                                         Litkovitz, M.J.

WARDEN, CHILLICOTHE                         **REPORT AND**
CORRECTIONAL INSTITUTION,                   **RECOMMENDATION**
      Respondent.

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in London, Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel.  (Doc. 1).  This matter is before the Court on respondent's motion to dismiss (Doc. 8), which petitioner opposes.  (*See* Doc. 9).

## I.  PROCEDURAL HISTORY

### A.  State Proceedings

This case has had a lengthy procedural history in the state courts, which is set forth below.

#### 1.  Trial And Appeal Proceedings:  July 2007-August 25, 2010

In July 2007, after petitioner waived his right to prosecution by indictment, the Butler County, Ohio, Prosecuting Attorney filed a bill of information with the Butler County Court of Common Pleas charging petitioner with one count of sale of unregistered security in violation of Ohio Rev. Code § 1707.44(C)(1) (Count 1); one count of perjury in violation of Ohio Rev. Code § 2921.11 (Count 2); and one count of forgery in violation of Ohio Rev. Code § 2913.31(A)(3) (Count 3).  (Doc. 8, Exs. 1-2).  The charges stemmed from an alleged "multi-million dollar Ponzi

scheme involving 200 investors," which petitioner, a licensed insurance agent, operated from 2000 to 2007.  (*See id.*, Ex. 36, at PAGEID#: 458).  At the plea hearing held on July 17, 2007, where petitioner entered a guilty plea to all counts, the prosecutor provided the following summary of the evidence that resulted in the agreement between petitioner and the State to proceed with a guilty plea based on the bill of information instead of an indictment:

> Mr. Rose is a licensed insurance agent in the State of Ohio. . . .  He's been in business in Fairfield, Ohio for . . . more than 20 years and holding himself out as an investment advisor for a number of years.  He has no license to sell securities.
>
> What he has operated – by his own admission since year 2000 – has operated essentially in the form of what is called a Ponzi scheme.  A Ponzi scheme being where money is taken in from investors.  Paid out for money – money is paid out to investors.  And typically the money that is going out the door to old investors is coming in the door from new investors.  It is somewhat similar to a pyramid scheme.
>
> By Mr. Rose's own admissions under oath in a deposition two weeks ago, after having been read his Miranda rights, he has acknowledged that by his estimates there are approximately 200 investors who have participated in this Ponzi scheme; that he's taken in in excess of $10,000,000.  And that he's probably $45,000,000 in the hole to these investors at this point in time.  And that is by his own estimates.
>
> There are two accounts involved in this thing principally.  The two accounts being business accounts at First Financial Bank into which most of the checks and funds were deposited when they were received from the investors.  At that point, the funds were commingled in that account.  Most of the funds or some portion of the funds left the First Financial Bank account and went to Raymond James Financial Services in an investment or trading account and continued to be commingled with other investors' money, including . . . some of Mr. Rose's own money.
>
> There has been no particular way to account for the earnings or losses of individual investors.  Business and personal expenses were apparently paid from those accounts, as well as various payments out to some of the investors.  Promises of fixed payouts at unreasonable percentages have apparently been made to some of the investors that I've spoken with.  Promises that their principal was safe . . . ha[ve] apparently been made to some of the investors as well.
>
> There are numerous possible charges under the securities law violations that could

be used in this case and under the Ohio Revised Code. We've chosen the sale of unregistered securities, 1707.44(C)(1), which is a felony of the first degree. Other matters that have been involved in this scheme include the practice of law without a license.

Specifically, we have information that Mr. Rose has prepared wills appointing himself as administrator of at least some estates. Now, we do not at this point know how many. Forgery has been involved, which in part accounts for the forgery charge that we have on the information today. Specifically, Mr. Rose has admitted that he signed the signature of one Don Johnson, who is now deceased. And he signed that signature on a will purporting to be Mr. Johnson's will and filed that will with the probate court representing to the probate court that it was in fact, Mr. Johnson's will.

He also has acknowledged that he has signed at least five signatures of heirs of the Bullio estate, which is another probate estate in Butler County, Ohio. He's acknowledge[d] that he put or copied the signatures of those five heirs on the waiver of notice of hearing on inventory in that particular case.

We believe that there are at least some – in fact, he's acknowledged some and we believe perhaps many – annuities, policies which were for sale through his insurance agency. The applications for which, were signed by Mr. Rose in his course of business without first obtaining consent or permission of the persons for whom those annuities were purchased. Of course Mr. Rose has got or generated a commission each time he did that.

We do have victim statements that they have received annuities for which they never signed applications. The state insurance commission is going to proceed to investigate the annuity issue. . . .

We received evidence as late as today that annuities have been issued naming the defendant as a beneficiary of two annuities, as well as his secretary. . . . [T]hey have been named as beneficiaries on some annuities that were apparently purchased by a client of the firm, perhaps again, with a forged signature, although that is yet to be determined.

The forgery pleas in this case – because of what we think makes it a possibility that there may be a large number of forgeries, the forgery plea is intended to be a blanket plea for purposes of dealing with any restitution order arising out of or as a result of forgery or theft in this case.

We have a perjury charge in this case. Specifically, a Mr. . . . Mike Masana, a local attorney, took Mr. Rose's deposition in the Don Johnson will contest. He

3

specifically asked Mr. Rose if he had any hand in preparing Mr. Johnson's will. Mr. Rose denied that on the record and under oath. He now acknowledges that that testimony was false.

There are apparently, according to accounts that I'm receiving in my office now, a number of estates, decedent's estates, that Mr. Rose has been involved with. We have concerns at this point in time about the potential distribution of assets from some of those estates. Was all the money disclosed to the heirs? Did the money make it where it was supposed to go?

We already have indications from some victims that estate proceeds may have been included in the investment scheme and/or used for the purchase of annuities possibly with forged signatures. Mr. Rose has prepared tax returns on behalf of a number of his clients. He never, as far as we know, signed any of those tax returns as a tax return preparer.

So the bottom line is the State could have taken the time to put together a rather lengthy indictment on this case and prepared this case for trial. We have worked out this agreement to come forward with a bill of information at the level that we are. In exchange for which, Mr. Rose and his attorney have agreed to participate with a receiver who has been appointed in this case.

(*Id.*, July 17, 2007 Plea Hearing Tr. 6-11, at PAGEID#: 658-63).

Petitioner was convicted on all charges upon the trial court's acceptance of his guilty plea following a plea colloquy to ensure that petitioner was entering the plea knowingly, voluntarily and intelligently. (*See id.*, Ex. 3 & July 17, 2007 Plea Hearing Tr. 29-47, at PAGEID#: 681-99). Following a three-day sentencing hearing in April 2008, the trial court issued the final "Judgment Of Conviction Entry" on April 29, 2008, sentencing petitioner to the following consecutive terms of imprisonment for an aggregate prison term of twenty (20) years: ten (10) years for the sale-of-unregistered-security offense; five (5) years for the perjury offense; and five (5) years for the forgery offense. (*Id.*, Ex. 4; *see also id.*, Ex. 36, at PAGEID#: 458). Petitioner was also ordered to pay restitution, totaling $17,759,141.11, to victims injured by his illegal activities. (*Id.*, Ex. 4, at PAGEID#: 97-105).

4

Petitioner's trial counsel filed a timely notice of appeal to the Ohio Court of Appeals, Twelfth Appellate District, on petitioner's behalf.  (*Id.*, Ex. 5).  It appears from the record that the attorney who is representing petitioner in the instant action was appointed to represent petitioner on direct appeal.  (*See id.*, Ex. 30, at PAGEID#: 376, 381-82).  However, in November 2008, petitioner moved to have the attorney removed as his counsel on the ground that counsel "completely disregarded" his request to raise claims on direct appeal challenging the sufficiency of the evidence; trial counsel's effectiveness; and the prosecutor's alleged misconduct, which included the withholding of *Brady* material and engaging in a "vindictive prosecution."  (*Id.*).  Ultimately, in February 2009, petitioner filed a *pro se* appellate brief raising only two assignments of error challenging the imposition of maximum consecutive sentences.  (*Id.*, Ex. 6).  On October 19, 2009, the Ohio Court of Appeals found no merit to petitioner's arguments and affirmed the trial court's judgment.  (*Id.*, Ex. 12).

Petitioner did not pursue a timely appeal to the Ohio Supreme Court.  However, over five months later, on March 30, 2010, the attorney who had been removed as petitioner's counsel on direct appeal, and who now represents petitioner in the instant action, filed a notice of appeal and motion for delayed appeal on petitioner's behalf with the Ohio Supreme Court, which was granted.  (*See id.*, Exs. 13-15).  In the memorandum in support of jurisdiction that was subsequently filed, petitioner asserted the following claim as the sole proposition of law:  "In order for a court to impose a non-minimum or consecutive sentence, it must first find that imposition of a minimum sentence demeans the seriousness of the offense or otherwise violates the law."  (*Id.*, Ex. 16).  Thereafter, on August 25, 2010, the Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional

5

question." (*Id.*, Ex. 18).

### 2. First Post-Conviction Motion:  February 19-July 27, 2009

On February 19, 2009, while his direct appeal was pending before the Ohio Court of

Appeals, petitioner's counsel in the state appeal proceedings and instant action also filed a

petition for post-conviction relief with the trial court.  (*Id.*, Ex. 19).  In the petition filed pursuant

to Ohio Rev. Code § 2953.21, petitioner alleged the following claims of error:

1.  Defense counsel was ineffective in violation of the Sixth Amendment to the
    U.S. Constitution for advising Defendant that he had committed the offense of
    sale of an unregistered security and for inducing a guilty plea on that basis.

2.  Imposition of maximum consecutive sentences violated the defendant's rights
    to due process.

3.  Defense counsel was ineffective in violation of the Sixth Amendment to the
    U.S. Constitution for not pursuing the defendant's claim of vindictive
    prosecution.

4.  The prosecuting attorney's false representations that the State would remain
    silent at sentencing constituted a breach of the plea agreement.

(*Id.*, at PAGEID#: 246-56).  Petitioner also argued that the above claims of error were not

barred from review on *res judicata* grounds because they all depended "on facts outside

the record, making them inappropriate for review on direct appeal."  (*Id.*, at PAGEID#:

256).

The State filed a response in opposition to petitioner's post-conviction petition.

(*Id.*, Ex. 21).  In that pleading, the State argued that the trial court lacked jurisdiction to

consider the petition because it was filed over 180 days after the trial transcript was filed

in the direct appeal before the Ohio Court of Appeals and, thus, was untimely under Ohio

Rev. Code § 2953.21(A)(2).  (*See id.*, at PAGEID#: 270-73).  On March 16, 2009, the trial

6

court issued a Decision and Entry dismissing the post-conviction petition on the ground

that "it is time-barred and the Court lacks jurisdiction to consider the same under R.C.

§2953.21." (*Id.*, Ex. 23).

Petitioner's counsel appealed on petitioner's behalf to the Ohio Court of Appeals,

Twelfth Appellate District, arguing that the trial court had abused its discretion in

dismissing the petition. (*See id.*, Exs. 24-25). On July 27, 2009, the Ohio Court of

Appeals overruled the assignment of error and affirmed the trial court's judgment. (*Id.*,

Ex. 28). Respondent states that petitioner did not pursue a further appeal to the Ohio

Supreme Court in that matter. (*Id.*, Brief, p. 7, at PAGEID#: 59).

### 3. Second Post-Conviction Motion: December 2, 2009-November 22, 2010

On December 2, 2009, petitioner's counsel next filed a motion with the trial court entitled

"Motion To Vacate Plea; Motion To Vacate Sentence; Alternatively, Petition For Post Conviction

Relief." (*Id.*, Ex. 29). In that motion, petitioner contended, as he had in his prior petition for

post-conviction relief, that (1) his trial counsel was ineffective by providing "patently erroneous

advice" about his guilt on the charge of sale of an unregistered security; and (2) the prosecuting

attorney violated the terms of the plea agreement by not remaining silent at the sentencing

hearing. (*Id.*, at PAGEID#: 351-59). Petitioner also argued that his maximum consecutive

sentences violated due process and that his sentence was "void" in light of "new, material

evidence" that "fraudulent information" had been introduced at the sentencing hearing by

numerous alleged victims of the Ponzi scheme, who presented "perjured testimony" and inflated

the "actual harm" suffered. (*Id.*, at PAGEID#: 359-66).

On February 19, 2010, the trial court issued a Decision and Entry dismissing petitioner's

7

application to vacate his plea and sentence and alternative petition for post-conviction relief. (*Id.*, Ex. 32). The court reasoned that to the extent petitioner's application was construed as a motion under Ohio R. Crim. P. 32.1 to withdraw his guilty plea, the court lacked jurisdiction to entertain the motion, filed after the Ohio Court of Appeals had affirmed the trial court's judgment of conviction and sentence on direct appeal. (*Id.*, at PAGEID#: 389). The court reasoned further that to the extent the application was construed as a motion for post-conviction relief under Ohio Rev. Code § 2953.21, petitioner had failed to demonstrate that Ohio Rev. Code § 2953.23 applies to overcome the "time restraints" barring review of the petition. (*See id.*, at PAGEID#: 390-94). Finally, the court found that the doctrine of *res judicata* applied to bar review of petitioner's claims. (*Id.*, at PAGEID#: 394-96).

Petitioner's counsel appealed on petitioner's behalf to the Ohio Court of Appeals, Twelfth Appellate District, claiming that the trial court had abused its discretion in denying his motion without a hearing. (*Id.*, Ex. 33-34). On November 22, 2010, the Ohio Court of Appeals overruled the assignment of error and affirmed the trial court's judgment. (*Id.*, Ex. 36). The appellate court held that the trial court lacked jurisdiction and, therefore, did not err in failing to hold a hearing on petitioner's motion to withdraw his guilty plea filed "more than two years after [he pleaded] guilty to the charges, and more than one year after this court affirmed his sentence on direct appeal." (*Id.*, at PAGEID#: 461). The court also found that "to the extent that appellant asserts that his guilty pleas were not made knowingly, voluntarily, or intelligently in light of alleged newly-discovered evidence," the claim was "barred by res judicata" because the information obtained from receiver's reports, which "likely consisted of appellant's own records," would "have been known to appellant at the time his pleas were entered in 2007." (*Id.*, at

8

PAGEID#: 461-62). Finally, the court concluded that because petitioner "failed to meet the requirements of R.C. 2953.23(A)(1)(b)" with respect to his alternative petition for post-conviction relief, the trial court was "[w]ithout jurisdiction" to consider the time-barred petition and thus "was not required to hold an evidentiary hearing on the matter." (*Id.*, at PAGEID#: 465).

On December 3, 2010, petitioner filed a pro se motion entitled "Motion For Leave To Supplement Record Ultimately Motion For Reconsideration" with the Ohio Court of Appeals. (*Id.*, Ex. 37).[1] The motion was denied on December 22, 2010. (*Id.*, Ex. 38).

Respondent states that petitioner did not pursue an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' rulings. (*See id.*, Brief, p. 12, at PAGEID#: 64).

### 4. Proceedings On Additional Motions: April 25, 2011-May 8, 2013

On April 25, 2011, petitioner next filed a *pro se* motion to correct sentence with the trial court. (*Id.*, Ex. 39). On June 9, 2011, he filed another *pro se* motion with the trial court requesting a "Restitution Hearing" to dispute the amount owed to the victims on the ground that their "alleged economic losses are void of truth and knowingly presented as such." (*Id.*, Ex. 40). On January 30, 2012, petitioner's counsel filed yet another motion with the trial court on petitioner's behalf entitled "Supplemental Motion For Restitution Hearing; Motion For Re-Sentencing." (*Id.*, Ex. 41).

On February 22, 2012, the trial court dismissed petitioner's "instant motions" without a hearing. (*Id.*, Ex. 43). The court reasoned in pertinent part:

A review of the docket in this case reflects that Defendant has now filed in excess

---

[1] Respondent has noted that petitioner also filed nineteen *pro se* motions to supplement the record between September 2 and October 28, 2010, when his appeal was still pending before the Ohio Court of Appeals. (Doc. 8, Brief, p. 12 n.1, at PAGEID#: 64). Those motions are not part of the record before this Court.

9

of thirty (30) post-conviction motions and pleadings in one form or another in this case.  Most notably, he filed a post-conviction motion on December []2, 2009, entitled *Motion to Vacate Plea: Motion to Vacate Sentence: Alternatively, Petition for Post Conviction Relief*.  The Motion contained all of the arguments and elements contained in this current filing.  In a *Decision and Entry*, dated February 19, 2010, this court addressed each of those issues. . . .  The matter has long been res judicata, and Defendant long ago exhausted his appeals.

****

In the present case, this court ruled almost two years ago, that these claimed discrepancies did not amount to "new evidence" in the case. . . .  That decision was appealed.  The 12th District affirmed the decision of this court and further stated that the matter had already been *res judicata* before the trial court even considered it. . . .

****

In its February 1[9], 2010 Decision, this court stated as follows:

> For this Court, this matter is at endgame; it is over.  Defendant pled guilty, accepted the statement of facts, was found guilty, had a sentencing hearing, appealed, lost his appeal, filed a petition for post conviction relief, lost the petition, again appealed, lost that appeal and, now files this motion/petition, however it is denominated.  The doctrine of res judicata mandates that all litigation, whether civil or criminal, have some finality, and must come to a logical end.  It is time for Defendant to accept his conviction and sentence, and to serve that sentence; and, it is time for this Court to move on.

After all of that, Defendant appealed that decision and lost.  Yet, here we are again.  Since the February 2010 decision, Defendant has filed with this court alone, either *pro se*, or through his counsel, twenty-six separate, additional post conviction motions in one form or another.  Defendant's current motion, has now piled *res judicata* on top of *res judicata*.  How many times must this or other courts deal with arguments which it already ruled were *res judicata*?  Mr. Rose's motions are well past frivolity.

. . . .The Court finds that there is no basis to grant Defendant's most recent petition for post conviction relief, and further finds that the same should be summarily dismissed as frivolous.

10

(*Id.*, at PAGEID#:  533-35).

Petitioner's counsel filed an appeal on petitioner's behalf to the Ohio Court of Appeals, Twelfth Appellate District.  (*Id.*, Ex. 44).  On December 17, 2012, the Ohio Court of Appeals affirmed the trial court's judgment because "res judicata and the lack of jurisdiction" to consider petitioner's untimely motions, which were construed as a petition for post-conviction relief under Ohio Rev. Code § 2953.21, "bar[] his requested relief."  (*Id.*, Ex. 48, at PAGEID#: 615-17).

Petitioner's counsel timely appealed to the Ohio Supreme Court, asserting as the sole proposition of law that petitioner was "entitled to be re-sentenced when new evidence disputes the economic loss presented by the victims."  (*Id.*, Exs. 51-52).  On May 8, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  (*Id.*, Ex. 53).

**B.  Federal Habeas Corpus Petition**

Over eleven months later, on April 14, 2014, Petitioner's counsel filed the instant federal habeas corpus petition on petitioner's behalf.  (*See* Doc. 1).  Petitioner alleges the following grounds for relief:

> **Ground One (Branch I):**  The trial court erred in failing to resentence petitioner d[e]spite learning that his sentence was based upon fraudulent and materially false claims.
>
> **Ground Two (Branch II):**  Petitioner is entitled to a hearing regarding restitution since the amount of economic loss is lower than originally thought at the time of sentencing.
>
> **Ground Three (Branch III):**  It is unconstitutional to deny petitioner's request for resentencing despite the discovery of new evidence regarding the validity of the witnesses' testimony as to the amount of economic loss.
>
> > I.    Petitioner's sentence violates due process.
> >
> > II.  Petitioner's Sentence violates the Eighth Amendment's

11

Cruel and Unusual Punishment Clause.

(*Id.,* at PAGEID#: 6, 9, 13-16).

Respondent has filed a motion to dismiss the petition.  (Doc. 8).  Respondent contends that the petition is subject to dismissal with prejudice because it is barred from review by the applicable one-year statute of limitations governing federal habeas actions by state prisoners, which is set forth in 28 U.S.C. § 2244(d).  (*Id.*, pp. 17-29, at PAGEID#: 69-81).  Petitioner's counsel has filed a brief opposing the motion to dismiss.  (Doc. 9).

## II.  RESPONDENT'S MOTION TO DISMISS (DOC. 8) SHOULD BE GRANTED BECAUSE THE PETITION IS TIME-BARRED

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

12

The Court must first determine which limitations provision contained in 28 U.S.C. § 2244(d)(1) applies to petitioner's three grounds for relief. It is clear from the record that § 2244(d)(1)(B) and § 2244(d)(1)(C) are inapplicable because petitioner neither has alleged that he was prevented from filing a timely habeas petition by any state-created impediment to filing, nor has asserted a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review. A strong argument can be made that petitioner's claims are governed by the one-year statute of limitations set forth in § 2244(d)(1)(A) given the Ohio Court of Appeals' finding in its November 2010 decision affirming the denial of petitioner's second post-conviction motion that the evidence on which petitioner relies as support for his claims would "have been known to [him] at the time his pleas were entered in 2007." (*See* Doc. 8, Ex. 36, at PAGEID#: 461-62). Even assuming, as petitioner has suggested, that he did not discover the factual predicate for his claims until much later, thereby triggering applicability of the limitations provision set forth in § 2244(d)(1)(D), it appears from the record that petitioner was well aware of the factual basis for his claims by December 2, 2009, when he filed his second post-conviction motion with the trial court alleging for the first time that numerous victims had presented "perjured testimony" at his sentencing hearing in April 2008 inflating the amount of financial loss they had suffered. (*See* Doc. 8, Ex. 29, at PAGEID#: 359-66).

In this case, as respondent has recognized, petitioner's conviction did not become "final" within the meaning of § 2244(d)(1)(A) until November 23, 2010, when the ninety (90) day period expired for filing a petition for writ of certiorari to the United States Supreme Court from the Ohio Supreme Court's August 25, 2010 final entry in the state appeal proceedings. (*See* Doc. 8, Ex. 18). Although petitioner did not pursue a timely appeal to the Ohio Supreme Court from the

13

Ohio Court of Appeals' October 19, 2009 direct appeal decision, and delayed over five months before seeking an appeal with that court, the Ohio Supreme Court's granting of his delayed appeal motion restored the pendency of his appeal, thereby rendering his conviction non-final under § 2244(d)(1)(A) until the conclusion of review by the United States Supreme Court or expiration of time for seeking such review.  *See Jimenez v. Quarterman*, 555 U.S. 113, 120-21 (2009) (holding that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)"); *see also Lawrence v. Florida,* 549 U.S. 327, 333-34 (2007) (citing *Clay v. United States*, 537 U.S. 522, 527-28 (2003), as support for the conclusion that in contrast to the tolling provision set forth in 28 U.S.C. § 2244(d)(2), "direct review" for purposes of determining finality under § 2244(d)(1)(A) includes the time for seeking review in the United States Supreme Court).  *Cf. Ashcraft v. Warden, Lebanon Corr. Inst.*, No. 1:13cv195, 2014 WL 2532334, at *4 (S.D. Ohio June 5, 2014) (Bowman, M.J.) (Report & Recommendation) (distinguishing *Jimenez* from the numerous cases cited therein, which involved the *denial* of a delayed appeal motion that did not restart the limitations period), *adopted*, 2014 WL 3342569 (S.D. Ohio July 8, 2014) (Beckwith, J.).

In contrast, because petitioner knew the factual predicate for his claims by December 2, 2009, the limitations provision set forth in § 2244(d)(1)(D) would have been triggered almost a year earlier than the § 2244(d)(1)(A) provision.  Under § 2244(d)(2), the statute of limitations would have been tolled while the direct review proceedings were pending before the Ohio courts. However, tolling of the limitations period would have ended when the Ohio Supreme Court issued its final ruling on August 25, 2010 dismissing petitioner's appeal, and the clock would

14

have started to run one day later on August 26, 2010. *See Lawrence*, 549 U.S. at 333-34 (holding that in contrast to § 2244(d)(1)(A), § 2244(d)(2)'s applicability does not extend beyond state-court proceedings to include review by the United States Supreme Court). Therefore, under the unique facts of this case, it is to petitioner's benefit to apply the limitations provision set forth in § 2244(d)(1)(A) to his claims. Under that provision, the statute of limitations commenced running on November 24, 2010, one day after petitioner's conviction became final. *See* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000).

During the one-year limitations period that began on November 24, 2010, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Id.*

In this case, the proceedings held on petitioner's first post-conviction motion could not have had any tolling effect on the statute of limitations given that those proceedings concluded in July 2009 before the statute had even begun to run. (*See* Doc. 8, Ex. 28). In the proceedings held on petitioner's second post-conviction motion, the Ohio Court of Appeals affirmed the trial court's judgment on November 22, 2010, two days before the statute of limitations commenced running. (*See id.*, Ex. 36). However, petitioner filed a motion for reconsideration on December 3,

15

2010, which arguably tolled the limitations period until the Ohio Court of Appeals issued the final

entry in that matter on December 22, 2010.  (*See id.*, Exs. 37-38).  Petitioner's second post-

conviction motion, which was construed both as a motion to withdraw guilty plea and as a

petition for post-conviction relief, was denied by the state courts on timeliness and jurisdictional

grounds.  (*See id.*, Exs. 32, 36).  Therefore, it appears that the motion was not "properly filed"

within the meaning of § 2244(d)(2) and thus could not serve to toll the limitations periods during

the time it was pending before the state courts.  *See, e.g., Allen,* 552 U.S. at 6-7 (citing *Pace v.*

*DiGuglielmo*, 544 U.S. 408, 414, 417 (2005)) (holding that a state post-conviction petition

rejected as "untimely" by the state courts, was not "properly filed" under § 2244(d)(2)); *Zudell v.*

*Bradshaw*, No. 1:03cv1591, 2005 WL 1532595, at *3 (N.D. Ohio June 29, 2005) (citing *Godfrey*

*v. Beightler*, 54 F. App'x 432, 432-33 (6th Cir. 2002)) (holding that a motion to withdraw a guilty

plea, which the trial court lacked jurisdiction to consider because the motion was filed after the

petitioner's "case went through the entire direct appeal process," was not "properly filed" within

the meaning of § 2244(d)(2) and, therefore, did not toll the limitations period while it was

pending before the state courts); *see also Vultee v. Sheets,* No. 3:10cv278, 2010 WL 6389595, at

*2 (S.D. Ohio July 27, 2010) (Merz, M.J.) (Report & Recommendation) (rejecting any argument

by the petitioner that the habeas limitations period was tolled under § 2244(d)(2) during the

pendency of his motion to withdraw guilty plea in the state courts because "the statute of

limitations is tolled only by the pendency of a properly filed collateral attack, and [the state trial

judge] held that Ohio courts do not have jurisdiction to consider a motion to withdraw on a basis

which has previously been affirmed by the court of appeals"), *adopted*, 2011 WL 1211558 (S.D.

Ohio March 29, 2011) (Rice, J.).  *Cf. Munchinski v. Wilson*, 694 F.3d 308, 328 (3rd Cir. 2012)

16

(holding that the one-year statute of limitations governing the habeas petitioner's *Brady* claims was not statutorily tolled by the pendency in the state courts of a post-conviction petition that was dismissed for lack of jurisdiction, because "[a]s such, the petition was never properly filed" within the meaning of § 2244(d)(2)).  Nevertheless, solely for the sake of argument, the undersigned will assume in petitioner's favor that the statute of limitations was tolled through the pendency of proceedings held on his second post-conviction motion, which ended on December 22, 2010 when the Ohio Court of Appeals denied petitioner's motion for reconsideration.  (*See* Doc. 8, Ex. 38).

The statute began to run on December 23, 2010, and ran for 123 days before petitioner filed his next *pro se* motion on April 25, 2011 with the trial court challenging his sentence, followed by other motions (including a motion by his counsel) requesting a restitution hearing, resentencing and other post-conviction relief.  Again, the undersigned will assume in petitioner's favor that the statute of limitations was tolled during the pendency of proceedings on those motions in the state courts.  However, the statute began to run again after the Ohio Supreme Court issued the final ruling on May 8, 2013 declining to accept jurisdiction of petitioner's appeal from the lower courts' rulings.  The statute commenced running on May 9, 2013 and expired at the very latest 242 days later, on January 6, 2014, unless equitable tolling principles apply to further extend the limitations period.

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland v. Florida,* 560 U.S. 631, 645 (2010), "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control."  *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783

17

(6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at

784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has

been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way

and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted));

*see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously

utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable

tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework"

to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th

Cir. 2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which

requires both reasonable diligence and an extraordinary circumstance, has become the law of this

circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner has argued that he has been diligently pursuing his rights in the state courts.

However, he has not shown that an "extraordinary circumstance" prevented him from filing a

timely federal habeas petition within a year after his conviction became final on November 23,

2010, or certainly within a year after the Ohio Court of Appeals issued its final ruling on

December 22, 2010 denying his motion for reconsideration in the proceedings held on his second

post-conviction motion. In any event, even assuming, *arguendo*, that the limitations period was

tolled while petitioner unsuccessfully pursued relief in the state courts from April 25, 2011

through May 8, 2013, rearguing the same issues that had previously been adjudicated in the

proceedings held on his first and second post-conviction motions, petitioner cannot claim that he

was prevented from filing a timely federal habeas petition by the absolute latest deadline date of

January 6, 2014.

18

Finally, petitioner has not shown that the procedural bar to review should be excused based on a colorable showing of actual innocence.  "To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1935 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)).  Petitioner generally asserts in his memorandum in opposition to the motion to dismiss that he "has maintained his innocence throughout his legal battles" and that his "guilty plea was based upon the belief that he would not receive anywhere near the sentence of imprisonment that he eventually received."  (Doc. 9, p. 5, at PAGEID#: 1019).  Petitioner has not come forward with any "new evidence" demonstrating that he is innocent of the criminal charges brought against him.  Moreover, he cannot complain about the sentence that was imposed given that the trial court expressly advised him at the plea hearing of the maximum aggregate sentence he could receive in pleading guilty to the three charges.  (*See* Doc. 8, July 17, 2007 Plea Hearing Tr. 37-39, at PAGEID#: 689-91).  Upon review of the record, the undersigned is convinced that petitioner has not met his burden of showing that it is more likely than not that no reasonable juror would have convicted him if the matter had proceeded to trial.

Accordingly, in sum, the undersigned concludes that the instant federal habeas corpus petition is barred from review by the one-year statute of limitations governing habeas corpus actions brought pursuant to 28 U.S.C. § 2254.  The undersigned has assumed in petitioner's favor that the most favorable statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A) applies to his claims, which was not triggered until November 23, 2010, when petitioner's conviction became "final" by the conclusion of direct review or expiration of time for seeking such review.  Despite

19

the fact that it appears statutory tolling under § 2244(d)(2) for "properly filed" state post-conviction motions does not apply in this case, the undersigned has further assumed in petitioner's favor that (1) the statute of limitations was tolled and did not commence to run until December 23, 2010, the day after the Ohio Court of Appeals denied petitioner's motion for reconsideration in the proceedings on his second post-conviction motion; and (2) the statute was tolled again from April 25, 2011 through May 8, 2013 while various motions were pending before the Ohio courts in which petitioner reargued the same issues that had already been addressed by the state courts in ruling on his first and second post-conviction motions. Even after making all those assumptions in petitioner's favor, the limitations period expired by January 6, 2014, over three months before petitioner initiated the instant action. Equitable tolling principles do not apply to further extend the limitations period or otherwise avoid the statute of limitations bar to review in this case. Therefore, respondent's motion to dismiss (Doc. 8) should be **GRANTED** on the ground that the petitioner's habeas corpus petition, filed on April 14, 2014, is time-barred.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 8) be **GRANTED**, and petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED** with prejudice on the ground that the petition is time-barred under 28 U.S.C. § 2244(d).

2. A certificate of appealability should not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded is barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in Slack v. *McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable

20

whether the Court is correct in its procedural ruling.[2]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 2/10/15                          /s/Karen L. Litkovitz
                                       Karen L. Litkovitz
                                       United States Magistrate Judge

---

[2] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief. *See Slack,* 529 U.S. at 484. However, it is noted that petitioner faces another procedural bar to review because it appears from the record that he procedurally defaulted and has waived his claims for relief. Furthermore, to the extent petitioner seeks to challenge the restitution portion of his sentence, his claim is not cognizable in this federal habeas proceeding. *See Washington v. McQuiggin,* 529 F. App'x 766, 772 (6th Cir. 2013) (and cases cited therein) (in holding that the federal habeas court lacked subject matter jurisdiction to consider petitioner's claim challenging the portion of his sentence requiring him to pay his court-appointed counsel's fees, the Sixth Circuit pointed out by way of analogy that "fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim" and that "collateral relief from a noncustodial punishment, such as a fine or restitution order, is not made readily available to a defendant just because he happens to be subject to custodial penalties"), *cert. denied,* 134 S.Ct. 916 (2014); *see also Bailey v. Hill,* 599 F.3d 976, 979-84 (9th Cir. 2010) (and cases cited therein) (involving restitution order imposed as part of the criminal sentence); *King v. Booker*, No. 2:11cv13676, 2014 WL 2587638, at *10-11 (E.D. Mich. June 10, 2014) (same).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JERRY R. ROSE,                                          Case No. 1:14-cv-308
      Petitioner,

                                      Dlott, J.
    vs                                          Litkovitz, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
      Respondent.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc